# THE PORTIA.

## THE FAIR WIND.

### REED v. THE PORTIA.

### NEW YORK, N. & H. STEAMSHIP CO. v. THE FAIR WIND.

#### (District Court, E. D. New York. April 12, 1893.)

COLLISION—STEAM AND SAIL MEETING—CHANGE OF SAILING VESSEL'S COURSE.
A collision occurred in Long Island sound, by night, between the steamer Portia, bound west, and the schooner Fair Wind, sailing east. On the evidence the court rejected the story of the schooner, that the steamship was first seen to windward, afterwards passed to leeward, and then suddenly changed again, throwing herself across the bows of the schooner, which had always held her course; but the court found, on the evidence, that the steamer, having seen the light of the schooner in season, was properly maneuvered to avoid her, when her efforts were thwarted, and the collision occasioned, by a luff on the part of schooner. *Held*, that the latter was in fault for the collision, in failing to hold her course.

In Admiralty. Cross libels for collision.

Butler, Stillman & Hubbard, for The Portia.
Goodrich, Deady & Goodrich, for The Fair Wind.

BENEDICT, District Judge. The collision between the schooner Fair Wind and the steamer Portia, out of which these actions arose, occurred at a point off Eaton's Neck, in the center of Long Island sound, between 10 and 11 o'clock P. M., on July 30, 1892. The night was dark, sky overcast, and at times it was raining. The schooner was bound to the westward; the steamer was bound to the eastward. The wind was about east. The vessels came together at right angles, the schooner's bowsprit bringing up on the port bow of the steamer, then swinging under a port helm. I find it impossible to reconcile the conflicting statements given by the persons on board the respective vessels. Of the two theories put forth, one must be rejected. According to the testimony from the schooner, the steamship when first seen was to windward of the schooner. Afterwards she passed to leeward of the schooner, and then, by a sudden change under her port helm, when she was perhaps two points to leeward of the schooner, and close at hand, she took a course which brought her across the bows of the schooner, the schooner having held her course without change. According to the testimony from the steamship, the steamship was never to leeward of the schooner, but always to windward of the schooner, the courses being nearly opposite. The red light of the schooner was seen by the steamer in time to give abundant room by porting, and the steamer would have cleared the schooner had not the schooner luffed as the vessels drew near each other.

If the steamer was always to the windward, and never to the leeward, of the schooner, the conclusion that the schooner luffed would necessarily follow, for the steamer was swinging to windward. The schooner admits that when first seen the steamer was

to windward, but declares that the steamer afterwards passed to leeward of the schooner, and, if she had held that course, would have passed to leeward of the schooner. It is not easy to see why, if, as the schooner's witnesses say, the steamship gained a position of safety by crossing the schooner's course to leeward, she should afterwards have attempted to recross the schooner's course, at the manifest hazard of a collision. Indeed, it does not seem possible that the collision could have happened in the manner stated by the witnesses from the schooner, for all agree that the vessels struck at right angles, or a little less. In order to bring the vessels together upon such an angle, if the steamer gained two, or even one point to leeward of the schooner, and if the schooner held her course, the steamer would be compelled to change seven points in the time required for the mate of the schooner to run 23 feet. It would be impossible for the steamship in that short time to change seven points. In that time and distance a luff of the schooner would be necessary to bring the vessels together at right angles, or a little less.

I am therefore inclined to accept the account given by the witnesses from the steamer, and hold the schooner responsible, upon the ground that she did not hold her course.

As bearing upon the question whether the schooner held her course, some portions of the testimony from the schooner may be noticed. For example, the mate says, in reply to the question, "What was the schooner's course?" "West by south was the course given." When asked if he was certain that no change in the schooner's course was made up to the time of the collision, he says, "Well, I didn't watch the compass all the time." He says that, when he, the master, and the mate were together on the quarterdeck, the light of the steamer was observed on the port bow. The man at the wheel says that, when the light was observed, it was on the starboard bow. He also says that at the time he observed the steamer's lights the mate of the schooner was forward. He also says: "The schooner was very quick. She would take the wind and swing to very rapidly, over a half, and sometimes three quarters, of a point." The master says that, 10 minutes before he discovered the steamer's lights, he changed the course of the schooner from west to west by south; and, when his attention was called to the steamer's lights, he told the man at the wheel "to keep her as she was; to keep her on the steamer." If the light was kept on the steamer, and the steamer ported, as she says she did, such an order would require the schooner to luff. The man at the wheel says that on his course the jibs were flopping about. The witnesses from the steamship say that at the collision the schooner's jibs were full.

These statements do not seem to me entirely consistent with the theory of the schooner, and furnish some support to the contention of the steamer that the schooner did not hold her course. Much stress has been laid on evidence in the case tending to show that the schooner's light was not seen by those on the steamer as soon as

it might have been; but I do not see how this can affect the decision of the case. If the steamer was to windward of the schooner, as the weight of evidence seems to show, the action taken by the steamship, when she did see the schooner, was a proper action to be taken, and it was taken in time to have avoided collision if the schooner held her course.

The libel against the Portia must be dismissed, with costs. In the action against the Fair Wind, the libelant must have a decree, with an order of reference, to ascertain the amount of the damages.